## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| **HAROLD "BUD" ERIC HAM** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **2:19-CV-31-Z-BR** |
| | § | |
| **DIRECTOR,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division** | § | |
| | § | |
| **Respondent.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## TO DENY PETITION FOR A WRIT OF HABEAS CORPUS

## I.

## STATEMENT OF THE CASE

Petitioner Harold "Bud" Eric Ham was charged by indictment with murder in the 100th District Court of Hall County. *See State v. Ham*, No. 3477; (ECF No. 32-1 at 4.) A jury found Ham guilty as charged and sentenced him to life imprisonment. (ECF No. 32-1 at 5.)[1] The Seventh District Court of Appeals for Texas affirmed Ham's conviction. *Ham v. State*, No. 07-15-00329-CR, (Tex. App.—Amarillo 2016 pet. ref'd); (ECF No. 32-1 at 8-11). The Texas Court of Criminal Appeals ("TCCA") then refused Ham's petition for discretionary review ("PDR"). *Ham v. State*, PD-0927-16 (Tex. Crim. App. 2017); (ECF No. 32-1 at 13.)

---

[1] Ham was originally tried for the murder in 2009. *See Ham v. State*, No. 07-15-00329-CR, (Tex. App.—Amarillo 2016 pet. ref'd); (ECF No. 32-1 at 10-11, n.3). A Hall County jury convicted him and assessed punishment at ninety-nine years' imprisonment. (*Id.*) The conviction and sentence were affirmed on direct appeal. (*Id.*) But, on state habeas review, Ham "argued that his trial counsel erroneously advised him of the availability of community supervision." (*Id.*) The TCCA granted relief and set aside the trial court's judgment. (*Id.*) (citing *Ex parte Ham*, 2014 Tex. Crim. App. Unpub. LEXIS 863 (Tex. Crim. App. Oct. 8, 2014) (per curiam) (not designated for publication)).

Ham then filed this petition for a federal writ of habeas corpus pursuant to 28 U.S.C. § 2254 on February 8, 2019.  (ECF No. 3 at 11.)  The Court stayed the proceedings to allow Ham to exhaust his claims in state habeas court.  (ECF No. 25.) Ham filed a state habeas application, which the TCCA denied without written order on March 17, 2021.  *Ex parte Ham*, No. WR-80,114-05 (Tex. Crim. App. Mar. 17, 2021); (ECF No. 33-1.)  This Court lifted the stay and ordered the State to supplement the record to include the administrative record of Ham's state habeas proceedings, as well as to provide supplemental briefing on the merits of Ham's claims and any potential defenses. (ECF No. 31 at 2.)  The State complied; and Ham filed a response to the supplemental briefing.  (ECF Nos. 32, 33, 34.)

## II.

## PETITIONER'S ALLEGATIONS

Ham contends that he is being held in violation of the Constitution and the laws of the United States for the following reasons:

1.  His trial counsel was ineffective:

    a.  For failing to request a mitigating instruction on voluntary intoxication and for failing to make closing arguments in support of leniency during punishment;

    b.  For failing to object to the prosecutor's improper and highly inflammatory closing arguments during punishment;

    c.  For failing to adequately investigate the loss or destruction of audio and video evidence; and

    d.  For failing to have command of controlling law regarding the Rule of Optional Completeness.

2.  His appellate counsel was ineffective for failing to raise issues regarding the denial of a suppression motion, judicial bias, and the denial of a motion to admit the statement of an officer.

(ECF Nos. 3, 7.)

## III.

## **STANDARD OF REVIEW**

Section 2254 of Title 28 of the United States Code authorizes a federal court to entertain a petition for a federal writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment if the prisoner is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  However, a court may not grant relief on any claim that was adjudicated on the merits in state court proceedings unless a petitioner shows that the prior adjudication:

1.  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

2.  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d); *see Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000).

The Supreme Court has concluded the "contrary to" and "unreasonable application" clauses of Section 2254(d)(1) have independent meanings.  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  Under the "contrary to" clause, a federal court may grant relief if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts.  *Brown*, 544 U.S. at 141; *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) ("A state court's decision is 'contrary to' our clearly established law if it 'applies a rule that contradicts the governing law set forth in our

cases' or it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'").  A state court's failure to cite Supreme Court authority does not, *per se*, establish the state court's decision is "contrary to" clearly established federal law: "the state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decisions contradicts them.'"  *Mitchell*, 540 U.S. at 16.

Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the petitioner's case.  *Brown*, 544 U.S. at 141; *Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  A federal court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  *McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) ("A federal habeas court can only set aside a state-court decision as 'an unreasonable application of …clearly established Federal law,' § 2254(d)(1), if the state court's application of that law is 'objectively unreasonable.'"); *Wiggins*, 539 U.S. at 520-21.  The focus of this inquiry is on whether the state court's application of clearly established federal law was objectively unreasonable—an "unreasonable" application is different from a merely "incorrect" one.  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under the [Antiterrorism and Effective Death Penalty Act ("AEDPA")] is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."); *Wiggins*, 539 U.S. at 520; *Price v. Vincent*, 538 U.S. 634, 641 (2003) ("[I]t is the habeas applicant's burden to show that the state court applied

that case to the facts of his case in an objectively unreasonable manner"). "Under the [AEDPA], a state prisoner seeking a writ of habeas corpus from a federal court 'must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement.'" *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).

This Court must accept as correct any factual determinations made by the state courts unless the petitioner rebuts the presumptions of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The presumption of correctness applies to both implicit and explicit factual findings. *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."). Deference to the factual findings of a state court is not dependent upon the quality of the state court's evidentiary hearing. *See Valdez*, 274 F.3d at 951 (holding that a full and fair hearing is not a precondition according to section 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor to applying section 2254(d)'s standards of review). A "paper hearing" is sufficient to afford a full and fair hearing on factual issues, especially where the trial court and state habeas courts were the same. *Hill v. Johnson*, 210 F.3d 481, 489 (5th Cir. 2000); *Murphy v. Johnson*, 205 F.3d 809, 816 (5th Cir. 2000).

Furthermore, a denial, even though it does not contain a written opinion, is not silent or ambiguous. *See Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)

(holding a "denial" signifies an adjudication on the merits). It is a decision on the merits and is entitled to the federal statutes' standards of deference. 28 U.S.C. § 2254(d); *see also Neal v. Puckett,* 239 F.3d 683, 686 (5th Cir. 2001) (explaining that in the context of federal habeas proceedings, "adjudication 'on the merits' is a term of art that refers to whether a court's disposition of the case was substantive"). The Supreme Court has reconfirmed that Section "2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Even if "a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 98.

Moreover, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). This standard is difficult to meet, and the Supreme Court has affirmed that "it was mean to be so." *Id.* at 102.

Finally, the Supreme Court has also held that review under Section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Perhaps more compelling, the Supreme Court made clear that Section 2254(e)(2)—the statutory mechanism through which Congress limited a petitioner's ability to obtain a federal evidentiary hearing (and to expand the federal habeas record)—has no application when a federal court reviews claims pursuant to Section 2254(d), whether or not a petitioner might meet the technical requirements of section 2254(e)(2). *See id.* at 183-86 (showing that the Supreme Court

explicitly rejected the proposition that section 2254(d)(1) has no application when a federal court admits new evidence under Section 2254(e)(2); *see also id.* at 203 n.20 ("Because Pinholster has failed to demonstrate that the adjudication of his claim based on the state-court record…[violated § 2254(d)(1),] our analysis is at an end. We are barred from considering the evidence *Pinholster* submitted in the District Court that he contends additionally supports his claim.") (internal citation omitted). The Supreme Court reasoned:

> Today, we…hold that evidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court.

*Id.* at 185. Therefore, this Court must review the reasonableness of the state court determinations under Section 2254(d), with reference only to the record actually before the state court.

## IV.

## <u>MERITS</u>

### A.      Legal Standard for Ineffective Assistance of Counsel Claims

Claims concerning the alleged ineffective assistance of counsel ("IAC"), whether at trial or on direct appeal, are reviewed under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). First, a petitioner must demonstrate his attorney's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-99. A petitioner must prove entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel'

guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) ("It is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed…by the Sixth Amendment' that *Strickland's* first prong is satisfied.") (quoting *Strickland*, 466 U.S. at 687).

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003).

Second, a petitioner must show his attorney's substandard performance prejudiced him. *See Strickland*, 466 U.S. at 687. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "[T]he question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 562 U.S. at 111. "The likelihood of a different result must have been substantial, not just conceivable."

*Id.* at 112. An inquiry into counsel's performance is unnecessary if a petitioner fails to show prejudice. *See Strickland*, 466 U.S. at 697.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of Section 2254(d)(1). *See Gregory Thaler*, 601 F.3d 347, 351-54 (5th Cir. 2010). In other words, under the AEDPA, a federal district court cannot grant a habeas application with respect to an IAC claim that was adjudicated on the merits in state court unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" *See id.*; 28 U.S.C. § 2254(d)(1). The AEDPA does not permit a *de novo* review of state counsel's conduct on federal habeas review of IAC claims. *Harrington* 562 U.S. at 101-02, 109. Rather, the court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen*, 563 U.S. at 190; *see Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of IAC claims is doubly deferential "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'" and "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt.'") (quoting *Burt v. Titlow*, 571 U.S. 12, 15, 22 (2013). In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland's* standard" but instead "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101.

**B.       ANALYSIS**

**1.       Ground One: Failure to Request Mitigating Instruction on Intoxication and Failure to Make Closing Argument in Support of Leniency**

Ham claims that his trial counsel was ineffective at sentencing for not requesting a mitigating instruction on intoxication in accordance with Texas Penal Code § 8.04, which, in pertinent part, states:

> (b)      Evidence of temporary insanity caused by intoxication may be introduced by the actor in mitigation of the penalty attached to the offense for which he is being tried.

> (c)      When temporary insanity is relied upon as a defense and the evidence tends to show that such insanity was caused by intoxication, the court shall charge the jury in accordance with the provisions of this section.

(ECF No. 3 at 5; ECF No. 7 at 1-2).  Ham has not shown that the TCCA's rejection of this claim was an unreasonable application of *Strickland*.  As noted, Ham must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Strickland*, 466 U.S. at 688.  As the State notes, Ham's counsel presented six witnesses during sentencing, each of which were current or former community members who testified that Ham deserved forgiveness and a second chance. (ECF No. 12-14 at 175-199.).  The TCCA could have reasonably concluded that trial counsel's strategy was to focus on forgiveness, redemption, and mercy—not deflecting blame by highlighting Ham's intoxicated state, which had been addressed extensively during the guilt-innocence portion of the trial and which also came up during sentencing through a witness's testimony.  (*Id.* at 181) ("I think that what happened, he was drinking, and everyone knows that, and what they kind of call stupid drunk.  So I don't

think he realized the consequences of what he was doing when he did it, that it could hurt someone.").

Nor can Ham show any prejudice related to the failure to seek the temporary-insanity-due-to-intoxication instruction. For a mitigating instruction under Section 8.04, the petitioner must show that (1) his voluntary intoxication caused him not to know his conduct was wrong or (2) that it caused him to be incapable of conforming his conduct to the requirements of the law that he violated. *See Hernandez v. Johnson*, 213 F.3d 243, 250 (5th Cir. 2000) (citing *Cordova v. State*, 733 S.W.2d 175, 190 (Tex. Crim. App. 1987)). The record evidence does not support either showing. Ham admitted that he shot the victim "out of meanness." So, there is evidence that he knew his conduct was wrong. (*See* ECF No. 12-13 at 33.) And, as for Ham's intoxicated state and whether it was so pronounced that it caused him to be incapable of conforming his conduct to the requirements of the law that he violated, there was evidence—namely eyewitness testimony from Ham's friend—that Ham drank more on previous occasions and did not appear to be that intoxicated at the time of the murder. (*See* ECF No. 12-12 at 149-150.) The TCCA could have reasonably concluded that Ham did not show prejudice because he did not show that a request for a temporary-insanity-due-to-intoxication mitigating instruction would have been granted.

Further, "[i]n the case of ineffective assistance at sentencing, prejudice is established if the movant demonstrates that his sentence was increased by the deficient performance of his attorney." *Potts v. U.S.*, 556 F.Supp.2d 525, 534 (N.D. Tex. 2008) (citing *Glover v. United States*, 531 U.S. 198, 200 (2001)). Ham has failed to show that, even if his counsel obtained the mitigating instruction, the sentence would have been less

harsh.  Ham's life-imprisonment sentence is within the punishment range for the offenses.  *See* TEX. PENAL CODE § 19.02(c) (defining murder as a first-degree felony); TEX. PENAL CODE § 12.32 (offense of first-degree felony has a sentencing range of life or not more than 99 years and not less than 5 years, and up to a $10,000 fine).  Additionally, there were significant aggravating circumstances, including how many times the victim was shot (3), the fact that the final shot was essentially execution style, and Ham's declaration that he shot the victim (when the victim was trying to leave) out of "meanness" because the victim supposedly took beer from Ham's ice chest.  *See Ham v. State*, No. 07-15-00329-CR, (Tex. App.—Amarillo 2016, pet. ref'd); (ECF No. 32-1 at 9-10.)  Further, the jury was already aware of the role that Ham's intoxication played in the offense.[2]  Any argument that Ham would have received a more lenient sentence with the benefit of a temporary-insanity-due-to-intoxication mitigating instruction is purely speculative and insufficient to support an IAC claim.

Ham claims also that his trial counsel was ineffective for not making a closing argument at sentencing, Again, and for largely the same reasons, Ham fails to show prejudice.  Ham does not explain what any closing argument would have offered substantively that would have led to a more lenient sentence in light of the significant aggravating factors mentioned above.  Given his failure to show prejudice, Ham has not shown that the TCCA's denial of the IAC claim related to a failure to make a closing argument at sentencing amounts to an unreasonable application of *Strickland*.  Thus, this claim should be denied.

---

[2] Witnesses testified that Ham had been drinking before the murder.  (*See*, *e.g.*, ECF No. 12-12 at 84, 148-149).

## 2. Ground Two: Failure to Object to the State's Closing Arguments During Sentencing

Ham claims that his trial counsel should have objected to the State's "improper and highly prejudicial and inflammatory" closing arguments during punishment. (ECF No. 3 at 6.); (ECF No. 7 at 2-3.) Ham specifically takes issue with the following remarks from the State:

> Don't give this defendant a second chance. Don't let him walk the streets. There might be some people in Turkey, Texas that don't mind this murderer living right next door to them, but I tell you, he has done it once, he can do it again.
>
> And what bad situation is going to come up that makes him snap and take that same revolver and do it to somebody else? He took a life. The maximum punishment is life. That's what the State is asking for.

(ECF No. 12-14 at 204.)

Counsel, however, is not required to make frivolous motions or objections under *Strickland*. *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) (citing *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995)). The TCCA has held that closing arguments that a defendant who has committed murder may kill again are proper when it is a reasonable deduction from the evidence. *See*, *e.g.*, *Rocha v. State*, 16 S.W.3d 1, 22 & n.21 (Tex. Crim. App. 2000); *Cook v. State*, 858 S.W.2d 467, 477 (Tex. Crim. App. 1993).

Here, the evidence was that Ham, a frequent and sometimes heavy drinker (ECF No. 12-12 at 144, 149), shot the victim "out of meanness" while intoxicated, so it was a reasonable deduction that Ham may kill again, or, at the least, the TCCA could have reasonably made that conclusion and determined that any objection to the State's closing

argument would have been futile or meritless. Accordingly, the TCCA's rejection of this claim was not an unreasonable application of *Strickland*, and the claim should be denied.

### 3. Ground 3: Failure to Investigate Loss or Destruction of Audio and Video Evidence From Arrest

Ham claims that his trial counsel was ineffective for not investigating the loss or destruction of video evidence showing Ham's demeanor—including his level of intoxication—at the time of arrest, and, in turn, at the time he confessed to the Sheriff before the arrest. Specifically, Ham contends that his trial counsel should have investigated the "cause" of the disappearance of audio and video footage from a patrol vehicle that Ham was placed into following his arrest. (ECF No. 7 at 4.)

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigation unnecessary." *Strickland*, 466 U.S. at 691. To establish ineffective assistance of counsel based on a failure to investigate, "a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *Miller v. Dretke*, 420 U.S. 356, 361 (5th Cir. 2005).

Ham fails to explain what an investigation into the disappearance of the audio and video evidence would have revealed. To the extent Ham is claiming that an investigation would have shown that the evidence was purposefully destroyed or lost, such an assertion is conclusory, speculative, and insufficient to support habeas relief. *See Lafon v. Dretke*, No. 3:01-cv-1163, 2003 WL 22768664, at *6 (N.D. Tex. Nov. 18, 2003) ("Speculation does not entitle one to habeas relief. Petitioner's conclusory allegations of prosecutorial

misconduct are insufficient to support a claim for habeas relief.") (citing *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990)).[3]

Further, Ham has not shown that the video and audio evidence itself was even exculpatory. As noted below, while Ham claims that the evidence was favorable to him because it bore on his intoxication at the time of the confession, the officer with whom Ham rode to the jail testified that that the video and audio evidence would not have been favorable to Ham because "we didn't talk and Mr. Ham didn't say anything on the way to the jail." (ECF No. 12-13 at 157.) Given this apparent factual dispute between an officer and a murder suspect about the exculpatory value of the evidence, the TCCA might reasonably have concluded that Ham could not show the evidence was even exculpatory.

Further still, even if the evidence showed that Ham was intoxicated at the time of the confession, it was merely cumulative of other evidence in the record, which was used to argue Ham's suppression motion seeking to exclude the confession on grounds that it was involuntarily due to intoxication—a motion that was denied. (*See* ECF No. 12-10 at 9.)

---

[3] Though not alleged in the actual habeas petition, Ham hints in his memorandum that his counsel was ineffective for not moving to exclude his confession to the Sheriff on the night of the murder because the video and audio evidence was lost intentionally to undermine Ham's motion to suppress. (ECF No. 7 at 4.) Ham offers nothing but speculation to support the contention that the evidence was intentionally lost, and the claim, to the extent made, should be rejected. Ham also faults his counsel for not requesting an adverse inference to be included in the jury charge based on the alleged spoilation of evidence. (*See* ECF No. 7 at 4.) But Ham has not shown that the trial court would have granted any request for a spoilation-based adverse jury instruction. The duty to preserve evidence is limited to evidence that possesses an exculpatory value that was apparent before the evidence was destroyed. *White v. State*, 125 S.W.3d 41, 43-44 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). While Ham claims that the evidence was favorable to him because it bore on his intoxication at the time of the confession, the officer with whom Ham rode to the jail testified that that the video and audio evidence would not have been favorable to Ham because "we didn't talk and Mr. Ham didn't say anything on the way to the jail." (ECF No. 12-13 at 157.) Given this apparent factual dispute about the exculpatory value of the evidence, Ham has not shown that any adverse-instruction request would have been successful, and, therefore, fails to show that his trial counsel was ineffective for not seeking it.

At bottom, Ham fails to show, beyond speculation, how an investigation into the lost audio and video evidence could have impacted the outcome of the suppression hearing related to his confession. The TCCA's rejection of this claim was not an unreasonable application of *Strickland*, and this claim should be denied.

### 4. Ground Four: Failure of Appellate Counsel to Raise Arguments Concerning the Denial of Suppression Motion, Judicial Bias, and Denial of Motion to Admit the Statement of Officer Neal

In his fourth IAC claim, Ham alleges that his appellate counsel was ineffective for failing to raise issues regarding the denial of his suppression motion, judicial bias, and the denial of a motion to admit the statement of Officer Neal. (ECF No. 3 at 7; ECF No. 7 at 6.)

The same two-pronged standard for evaluating ineffective assistance claims against trial counsel announced in *Strickland* applies to complaints about the performance of counsel on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (holding a petitioner arguing ineffective assistance by his appellate counsel must establish both his appellate counsel's performance was objectively unreasonable and there is a reasonable probability that, but for appellate counsel's objectively unreasonable conduct, the petitioner would have prevailed on appeal). Thus, the standard for evaluating the performance of counsel on appeal requires inquiry into whether appellate counsel's performance was deficient, i.e., whether appellate counsel's conduct was objectively unreasonable under then-current legal standards, and whether appellate counsel's allegedly deficient performance "prejudiced" the petitioner, i.e., whether there is a reasonable probability that, but for appellate counsel's deficient performance, the outcome of the petitioner's appeal would have been different. *Smith*, 528 U.S. at 285.

Appellate counsel who files a merits brief need not and should not raise every nonfrivolous claim but, rather, may select from among them to maximize the likelihood of success on appeal. *Id.* at 288; *Jones v. Barnes*, 463 U.S. 745, 751 (1983). The process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail is the hallmark of effective appellate advocacy. *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones*, 463 U.S. at 751-52. "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Gree*r, 800 F.2d 644, 646 (7th Cir. 1985) (cited with approval in *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

Ham has not shown that the TCCA's denial of this claim was an unreasonable application of *Strickland* because he fails to show that the issues his appellate counsel actually presented—that the jury charge failed to include a general voluntariness instruction in compliance with Texas Code of Criminal Procedure article 38.22 and that the trial court erred in denying his request for a lesser included manslaughter charge— were weaker than the issues that Ham wanted his appellate counsel to raise. *See Gray*, 800 F.2d at 646; *Ham v. State*, No. 07-15-00329-CR, slip op. (Tex. App.—Amarillo 2016 pet. ref'd) (detailing the two issues raised on direct appeal); (ECF No. 12-1).

Regarding the merits of the suppression motion, Ham made no substantive argument to the TCCA as to why the trial court erred in denying that motion—nor does he make any such argument here. He says only in conclusory fashion that "[a]ny of these three claims were meritorious and warranted being raised on appeal more than the frivolous ground raised by appellate counsel." (ECF No. 7 at 6.) Ham's conclusory argument on this issue will not support federal habeas relief. *See*, *e.g.*, *Tugle v. Epps*, Civil Action

NO. 4:13CV12-SA-DAS, 2013 WL 1891291, at *8 (N.D. Miss. May 6, 2013) ("Petitioner fails to support his claim with any analysis or argument, and the Court finds it conclusory and insufficient to warrant federal habeas relief.") (citing *Koch*, 907 F.2d at 530).

The same is true of the judicial bias claim. Ham presented nothing to the TCCA, and he presents nothing here, supporting it other than a record citation indicating that the State submitted proposed findings and fact and concussions of law to the trial court related to the denial of the suppression motion. (*See* ECF No. 33-3 at 19) (citing ECF No. 12-11 at 8.)) This record citation contains no indication or hint of *ex parte* communications.

Finally, Ham claims that the trial court erred in excluding a statement from an officer, the substance of which appears to have been a statement from Ham the day after the murder explaining that he did not intend to shoot the victim. As explained more fully below, Ham has not demonstrated that this statement was admissible under the optional completeness rule. (*See* ECF No. 12-13 at 189) (Trial court's relevancy discussion of the pertinent testimony); (ECF No. 7 at 7) (explaining that the statement at issue was a statement to the officer in which Ham claimed that he did not intentionally shoot the victim).

Because Ham has not shown that the claims he wanted his appellate counsel to raise were "clearly stronger" than the claims appellate counsel did raise—and, relatedly, because he has not shown a reasonable likelihood of success on those claims—he has not shown ineffective assistance of appellate counsel. *See*, *e.g.*, *Walton v. Stephens*, Civil Action No. H-14-2370, 2015 WL 13912106, at *12 (S.D. Tex. June 22, 2015), *rec.*

*adopted*, 2015 WL 13912105 (S.D. Tex. Sep. 5, 2015) (noting, in rejecting appellate IAC claim, that the petitioner failed to show the issues he wanted his appellate counsel to raise were "clearly stronger" than those actually raised and that petitioner failed to show a reasonable likelihood of success on those claims). The TCCA's denial of Ham's appellate IAC claim was not an unreasonable application of *Strickland*, and this claim should be denied.

### 5. Ground 5: Failure to "Have Command" of Controlling Law Regarding the "Rule of Optional Completeness"

Ham claims that his trial counsel was defective for not having a command of the rule of optional completeness and that this deficiency prevented his trial counsel from introducing "critical evidence in support of his defense theory"—namely, a statement that he made to an officer the day after the murder "regarding his motive for shooting the complainant." (ECF No. 3 at 8; ECF No. 7 at 6-7). Specifically, when pressed as to how the out-of-court statement could be admitted, Ham's trial counsel suggested that it might come within the "present sense impression" exception. (ECF No. 12-13 at 184.) The trial court rejected that argument, and Ham now claims that his attorney should have argued that the statement was admissible under the rule of optional completeness instead.

The rule of optional completeness is an exception to the hearsay rule. *Pena v. State*, 353 S.W.3d 797, 814 (Tex. Crim. App. 2011). "Under the rule, if a party introduces into evidence part of a conversation or recorded statement, the party's opponent may introduce any other conversation or recorded statement that is necessary to explain or allow the jury to fully understand the part previously introduced." *Castillo v. State*, 573 S.W.3d 869, 877 (Tex. App—Houston [1st Dist.] 2019, pet. ref'd) (citing Tex. R. Evid. 107); *Pena*, 353 S.W.3d at 814. The rule "is one of admissibility and permits the

introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter 'opened up' by the adverse party," and is "designed to reduce the possibility of the jury receiving a false impression from hearing only part of some act, conversation, or writing." *Walters v. State*, 247 S.W.3d 204, 218 (Tex. Crim. App. 2007) (citations omitted).

The Court cannot say that—viewing trial counsel's action or inaction though the "doubly-deferential" confluence of § 2254 review and *Strickland*—Ham's trial counsel was ineffective for failing to raise an optional completeness argument. The optional completeness rule only applies when the proposed evidence is necessary to explain properly admitted evidence. *Walters*, 247 S.W.3d at 218. Ham has not shown why the statement offered to an officer the day after his inculpatory statements is necessary to explain those prior statements, and it is not apparent from the record, either. So, the TCCA might reasonably have concluded that any such argument or motion would lack merit, and counsel is not required to file meritless motions.

The TCCA's rejection of this claim was not an unreasonable application of *Strickland*, and this claim should be denied.

## V.

## **RECOMMENDATION**

For the above reasons, it is the **RECOMMENDATION** of the United States Magistrate Judge to the United States District Judge that the petition for a writ of habeas corpus filed by petitioner **HAROLD ERIC "BUD" HAM** be **DENIED**.

## VI.

## <u>INSTRUCTIONS FOR SERVICE</u>

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.


IT IS SO RECOMMENDED.

ENTERED July 18, 2022.


LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## \* <u>NOTICE OF RIGHT TO OBJECT</u> \*

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).